UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 76-6068-CIV-MIDDLEBROOKS

OLLIE CARRUTHERS, et al.,

        Plaintiffs,

v.

SCOTT ISRAEL, et al.,

        Defendants.
_____/

## JOINT MOTION FOR PRELIMARY APPROVAL OF SETTLEMENT AGREEMENT

### I. INTRODUCTION

Ollie Carruthers, et al., (the "Plaintiffs") and Scott Israel, the Sheriff of Broward County, Florida (the "Defendant") jointly move the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure for an Order: i) granting preliminary approval of the Settlement Agreement (appended as Exhibit D) entered into by the Plaintiffs and the Defendant (collectively the "Settling Parties"); and ii) approving the manner and form of giving settlement notice to the class members.

This motion is made on the grounds that i) the settlement is in the best interests of class members and the terms of the settlement fall within the range of reasonableness and possible approval; and ii) the proposed manner and form of providing notice of settlement to class members would fairly apprise class members of the settlement terms.

## II. PROCEDURAL HISTORY

Broward County (the "County") and the Settling Parties to this conditions of confinement class action entered into the Stipulation for Entry of Consent Decree on July 27, 1994 (the "Consent Decree"), which was then ratified and confirmed by Judge William Hoeveler on January 31, 1995. On June 7, 1995, Judge Hoeveler issued an amended Order incorporating the settlement agreement of the Settling Parties.

The Consent Decree acknowledges that conditions of confinement had been determined to be unconstitutional and provides that all Broward County correctional facilities are operated and maintained, at a minimum, by applying the most stringent provisions of applicable federal and Florida law and the standards set forth in Chapter 33-8 of the Florida Administrative Code, and applicable professional standards. Consent Decree at pg. 2, ¶ 4; pg. 4, at ¶ 10. The Consent Decree establishes a jail population cap and compliance monitoring and also specifically provides, *inter alia*, that use of force must be used only as a last resort, that mentally ill inmates who present a threat to others or themselves shall be supervised by documented sight checks by staff at intervals not to exceed fifteen minutes, and that any inmate identified as a suicide risk shall not be housed in a single occupancy cell unless observed continuously. *Id.* at pg. 6, ¶¶ 3 – 4.

In September 1996, the Sheriff and the County moved to terminate the Consent Decree. The Court, pursuant to Stipulation of the parties and Federal Rule of Evidence 706, on November 20, 2001, appointed Steven J. Martin as an expert witness to conduct inquiry into the conditions at the Broward County jail facilities. Pursuant to that Order, Mr. Martin, with the

retained assistance of Steven S. Spencer, M.D., and Jeffrey L. Metzner, M.D., conducted three rounds of inspections through 2004 and issued reports of their findings.

In 2004 the Settling Parties and the County entered into two stipulations for settlement (the "Stipulations"). *See* De. 886-1, 2 Exhibits A and B to Defendants' Joint Response to Court Order Requiring Response (the "Response") (DE 886). The Stipulations significantly narrowed the scope of the case, dismissing the medical claims altogether, and narrowing the scope of continuing monitoring, inspection, and judicial oversight of jail operations and conditions to those relating to mental health services, inmate rules and discipline, inmate safety and security, facility capacity, and inmate access to religious publications and services and access to legal materials. The Stipulations also stopped class counsel from engaging in formal discovery. *See, e.g.*, Second Stipulation for Settlement (DE 886-2) at 7. Under the Stipulations, Mr. Martin and Dr. Metzner produced additional reports on conditions and operations at the Broward County Jail ("the Jail") through mid-2006.

In 2010, the Jail experienced a significant increase in the prisoner population that resulted in substantial overcrowding affecting all Jail facilities. In October 2010, the Court, pursuant to Federal Rule of Evidence 706, appointed James Austin, Ph.D., as the Court's population management expert. (DE 875). Dr. Austin was charged with producing a publicly filed report that:

> (1) identifies and analyzes the County's criminal justice processes and policies that affect the population level at the Jail,
>
> (2) develops strategies and remedies to address those processes and policies so that the population level at the Jail can be reduced without significantly affecting public safety,
>
> (3) includes a baseline ten-year jail population forecast that would advise the County on the impact of current criminal justice trends, and

3

> (4) identifies realistic options that have been successfully implemented in other jurisdictions that will reduce the needs for current and future beds—especially for the pretrial felon population.

Oct. 4, 2010 Order (DE 875) at 1-2.

Dr. Austin last updated his report in October 2015. (DE 906-1 at 3-31).

In November 2014, Greg Jones and Renand Fleuridor, detainees in the Jail, separately filed *pro se* motions in this case asserting violations of the Consent Decree (the "Motions") (DEs 879, 880, 882, 883, 884). By Order dated December 16, 2014, the Court required the Sheriff and the County to respond to the Motions. On January 20, 2015, the Sheriff and the County filed their Response. On May 4, 2015, a Joint Status Report responding to Fleuridor and Jones' complaints was filed by all parties in response to an April 17, 2015 Order (DE 892) requiring an update on efforts to resolve the claims of noncompliance raised by the Motions.

On August 5, 2015, the Court issued an Order *sua sponte*, requiring the parties to show cause as to why the Consent Decree should not be dissolved or modified. On March 31, 2016, after receiving responses to the Order from the parties, the Court held a hearing on whether to dissolve the Consent Decree. Subsequent to the hearing, the Court issued an Order scheduling an evidentiary hearing for October 10, 2016. The Court also issued an Order requiring the parties to file Joint Status Reports by June 22, 2016, and September 26, 2016. On June 22, 2016, the Settling Parties filed a Joint Status Report. On July 2, 2016 the County filed its Corrected Status Report.

The parties subsequently reached another settlement in 2016 that was approved and entered by the Court on December 1, 2016. (DE 982). Under that settlement, Kathryn Burns,

M.D., MPH, and Michael A. Berg were appointed as joint experts in the fields of mental health, and jail conditions, respectively. Each expert has produced an initial report documenting their findings as to current and ongoing violations of federal law in their respective subject areas. As a result of further negotiations, the conditions claims other than mental health care were dismissed from this case by stipulation. (DE 997). Following the receipt of Dr. Burns' draft report, the parties entered into negotiations, and have resolved the mental health claims by the terms of this Settlement, for which the Settling Parties ask the Court for preliminary approval. Pursuant to the Court's June 25, 2018 Order (DE 1042), the parties have filed Dr. Burns' report with this Motion. *See* Ex. A-C, filed herewith.

### III. SUMMARY OF SETTLEMENT TERMS

This Settlement Agreement resolves the final area of dispute between the Settling Parties in this case such that an evidentiary hearing will be unnecessary. *Cason v. Seckinger*, 231 F.3d 777, 785 n.8 (11th Cir. 2000) (explaining that to satisfy the PLRA, district courts need not "conduct an evidentiary hearing about or enter particularized findings concerning any facts or factors about which there is not dispute."). The Settlement addresses Plaintiffs' contention of inadequate mental health care and facilities and provides a process for the evaluation of the jail conditions at issue by a highly qualified expert jointly designated by the parties.

The Agreement details changes to and/or maintenance of the Jail's policies and procedures to provide prisoners with quality and accessible mental health care. It includes provisions to ensure that intake screening and assessments are timely and effective at identifying mental health conditions. The Settlement also requires that prisoners placed on the mental health

caseload be given individualized treatment plans, and it establishes procedures for diverting prisoners to a hospital or psychiatric facility when more specific treatment is needed. *See* Ex. D.

A number of provisions in the Settlement Agreement relate to ensuring that all prisoners have timely access to clinically indicated mental health care. For example, the Jail will implement an electronic medical record in order to better track and provide for prisoners in need of mental health care. The Jail will also create systems so that all prisoners whose mental health needs require assessment or treatment are referred to providers and timely seen according to clinical need. *See id.*

With regard to mental health assessments, the Jail will ensure that these assessments occur outside of prisoners' cells in order to ensure privacy. If a prisoner cannot be seen outside of his or her cell, the Jail and current mental health vendor must each document a legitimate safety, security, or treatment rationale. The Agreement makes clear that being housed in a segregation unit or in the closed units of the Mental Health Unit is insufficient grounds to deny a face-to-face assessment outside of the prisoner's cell. The Agreement sets out criteria to ensure that the Jail provides prisoners with timely and appropriate psychotropic medications consistent with their clinical needs and all necessary monitoring to determine efficacy and adverse side effects. The Agreement explains when and how often prisoners reporting psychotropic medication use ought to be monitored and treated. *See id.*

The Settlement Agreement addresses the Jail's policies related to discipline, segregation, and the use of force. It ensures that mentally ill prisoners are not punished for behavior that is a product of their illness. The Agreement requires the Jail to revise policies related to placement in segregation and requires that any prisoner admitted to a segregation unit be assessed within 24

6

hours of placement. When involuntary treatment (use of restraints, use of seclusion, and forced medication) must be administered, this Agreement stipulates that such treatment will only be provided to prisoners who pose a danger to themselves or others. Such involuntary treatment will only be given after all reasonable alternatives have failed, and it will be under conditions that ensure the prisoners' health and safety. *See id.*

This Agreement contains provisions to ensure that the Jail maintains a sufficient number of custodial and Mental Health Staff to meet the mental health needs of prisoners. For example, within 180 days, the Jail will conduct a staffing analysis to identify the minimum number of Mental Health Staff needed to provide services to prisoners consistent with this Agreement. The Jail will maintain a Quality Improvement (QI) system, which will be expanded to identify and correct deficiencies in mental health services; there will also be periodic QI studies to assess compliance with all policies related to mental health services at the Jail. *See id.*

Under the Settlement Agreement, Dr. Burns will continue to serve as the joint expert to assess compliance with the substantive terms of the Agreement. The expert will issue reports at six month intervals determining whether the Jail has reached substantial compliance with each of the provisions. The Settlement Agreement provides that the Agreement will be fully implemented within 180 days from approval and entry by the Court. With the Court's approval, this Settlement will result in termination of the Consent Decree and a dismissal of this case when the Jail has maintained substantial compliance with each of the substantive provisions of the Agreement for one year. *See id.*

The Settling Parties believe that this Settlement is fair, reasonable, and adequate to merit the Court's preliminary approval. The parties further stipulate that this Agreement complies in all

7

respects with the Prison Litigation Reform Act, 18 U.S.C. § 3626(a), that the relief set forth is narrowly drawn, extends no further than necessary to correct violations of federal rights addressed herein, is the least intrusive means necessary to correct these violations, and will not have an adverse impact on public safety or the operation of a criminal justice system.

## IV. THE SETTLEMENT MERITS THE COURT'S PRELIMINARY APPROVAL

Judicial policy encourages voluntary settlement, particularly in complex class action litigation. *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005). Litigating a class action through trial is a time-consuming, expensive process. *Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1248 (S.D. Fla. 2016) (finding that the complexity, likely duration, and expense of a class action trial weighed in favor of settlement approval). Voluntary settlement conserves judicial resources, reduces the financial burdens borne by taxpayers and the parties, and lessens the risk that claimants might recover nothing. *Lipuma*, 406 F. Supp. 2d 1298 at 1323-24; *see also Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988) (noting that "[s]ettlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources."). Determining the fairness of a settlement is within the sole discretion of the Court, which should be guided by "the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1379 (S.D. Fla. 2007) (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.1984)). The Settlement proposed herein presents a fair resolution of the matter and is worthy of the Court's preliminary approval.

8

### A. The Settlement Satisfies the Standard for Preliminary Approval of Settlement Agreements.

In assessing whether a settlement qualifies for preliminary approval, the Court must find that the settlement agreement falls "'within the 'range of reasonableness.'" *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) (quoting NEWBERG ON CLASS ACTIONS § 11.26 (4th ed.)). At the preliminary approval stage, the Court also must determine whether the proposed settlement actually "falls within the range of possible approval" and whether it is reasonable to issue notice to the class members of the settlement's terms. *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1298 (S.D. Fla. 2007).

A settlement that results from good-faith, arms-length negotiations between informed counsel should be deemed fair, reasonable, and worthy of preliminary approval. *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654 at 661-62. A settlement that is the result of such negotiations is presumed to fall "within the range of reasonableness and possible judicial approval" for the purposes of preliminary approval. *Id.* at 662.

Here, the Settlement easily passes this standard. It resolves Plaintiffs' mental health claims by requiring Defendants to implement substantive remedies that address the entire continuum of mental health services at the Jail. Filed along with this Settlement is Dr. Burns' initial report on mental health services at the Jail. *See* Ex. A-C, filed herewith. The Settlement addresses each area where Dr. Burns has found deficiencies, and it installs a robust monitoring and enforcement mechanism that can ensure compliance.

9

### B. The Proposed Settlement Resulted from Arms-Length Negotiations and Is Not the Product of Collusion.

The proposed settlement was the product of arms-length negotiations between informed and experienced counsel on both sides. The parties also had the benefit of Dr. Burns' draft report. The Plaintiffs engaged in substantial discovery, including both site visits and extensive record reviews. Both Settling Parties communicated regularly in a good-faith effort to resolve the issues in contention, while striving to produce an outcome that was reasonable and fair to their respective clients. The Settlement went through a number of revisions to reflect the agreements that the Settling Parties reached as they negotiated. The Agreement to narrow the claims in contention also reflects the good-faith attempts on the part of both Settling Parties to reach a settlement.

The Settling Parties participated in several settlement teleconferences and exchanged multiple revisions to the settlement agreement, which culminated in the proposed settlement agreement executed on August 9, 2018.

### C. The Proposed Settlement Falls Within the Range of Possible Approval.

The primary duty of the Court in deciding whether to approve a settlement in a class action case is to protect the rights of absent class members. *See United States v. City of Miami*, 614 F.2d 1322, 1331 (11th Cir. 1980) ("the court's role as a fiduciary serving as guardian for the unrepresented class members has been held to stem directly from the language of [Rule 23].")
The proposed settlement represents a significant achievement for the Plaintiff class, as it enables an expert with impeccable credentials to assess conditions and practices at the Jail and to issue reports at six month intervals determining whether the Jail has reached substantial compliance with each of the substantive provisions of the Agreement. The expert is highly experienced in

devising fair and appropriate remedies as a court appointed and neutral monitor. The settlement ensures the protection of the Plaintiff class's federal rights while providing a clear process and timetable for the termination of the Consent Decree.

If the Settling Parties did not reach settlement, they would need to continue the discovery process (including additional discovery-related motions) and prepare for trial. Proceeding through discovery and pretrial motions, trial, and appeal would impose risks and costs. More importantly, it would substantially delay the implementation of mutually agreed remedies. Given the relief achieved and the risks involved in further litigation, the negotiated settlement represents a fundamentally "fair, reasonable, and adequate" resolution of the disputed issues and should be preliminarily approved. *See* Fed. R. Civ. Pro. 23(e)(2).

## V. THE PROPOSED NOTICE TO THE CLASS MEMBERS IS ADEQUATE

Under Federal Rule of Civil Procedure 23(e)(1), class members must receive notice of any proposed settlement before the Court approves a final settlement. The proposed written notices (in English and Spanish) of settlement are attached as Exhibit E. The Settling Parties have agreed upon the contents of the notice to the class, the manner of distribution, and the timeline for objections, if any.

The terms of the notice satisfy Rule 23(e)(1)'s requirements for notice of class settlements by apprising class members of the pendency of the action, describing the settlement agreement in a manner that allows class members to make their own determination regarding whether the settlement serves their interests, and affording the class members the opportunity to present objections. *See Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1988); *see also Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (requiring that –

for the purposes of due process – notice be "reasonably calculated, under all the circumstances, to apprise interested Settling Parties of the pendency of the action and afford them an opportunity to present their objections.").

The notice of the proposed settlement, in both English and Spanish, will be posted prominently on bulletin boards in each unit of the facilities within the Jail, including the Main Jail, the Joseph V. Conte Facility, the North Broward Bureau, the Paul Rein Detention Facility, and the Central Intake Bureau, and will be given to prisoners who are on segregation/lockdown status. Class members will be given thirty days to object to the proposed settlement by voice mail to Plaintiffs' counsel, whose name and telephone number have been posted throughout the Jail for more than twenty years, or by written notice to Plaintiff's counsel or the Court. Posting copies of the notice in prison or jail facilities is a routine manner of satisfying notice distribution requirements where the class comprises present and future prison or jail inmates. *See, e.g., Laube v. Campbell*, 333 F. Supp. 2d 1234, 1240-41 (M.D. Ala. 2004) (approving notice posted in prison facilities subject to the settlement agreement as adequate under Rule 23(e)(1)); *Gaddis v. Campbell*, 301 F. Supp. 2d 1310, 1314 (M.D. Ala. 2004) (approving notice "conspicuously posted on community bulletin boards in every dormitory in every Corrections Department prison, as well as in the law libraries and dining areas of each facility…[and] served individually on each inmate in segregation); *Raines v. Florida*, 987 F. Supp. 1416, 1422 (N.D. Fla. 1997) (ordering notice to be posted "in English and Spanish in conspicuous locations easily accessible by inmates at each facility operated by the Florida Department of Corrections or by any private contractor" and to be distributed to "[i]nmates in any confinement status, including but not limited to close management, administrative confinement, and disciplinary confinement…").

Such notice constitutes valid, due, and sufficient notice to the class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Rule 23 of the Federal Rules of Civil Procedure. The proposed forms of notice apprise class members in a fair and neutral way of the existence of the settlement with the Defendant and of their rights with respect to the settlement. The Settling Parties respectfully submit that these forms of notice satisfy the required standards for notices of class settlements.

## VI. CONCLUSION

For the foregoing reasons, the Settling Parties respectfully request that their motion be granted and that this Court issue an Order: i) granting preliminary approval of the Settlement Agreement entered into by the Settling Parties; and ii) approving the manner and forms of giving notice of the settlement to the class members.

Dated: August 9, 2018

Terrence Lynch, Esq.
Counsel for Defendant Scott Israel
Office of the General Counsel for
the Broward County Sheriff
2601 West Broward Blvd.
Fort Lauderdale, FL 33312
Telephone: (954) 831-8921
Facsimile: (954) 321-5040
Terrence_Lynch@sheriff.org

By: /s/ Terrence Lynch (by permission)
    TERRENCE LYNCH

By: /s/ Nancy G. Abudu
Nancy G. Abudu
ACLU Foundation of Florida
4500 Biscayne Blvd., Suite 340
Miami, FL 33137
Telephone: (786) 363-2700
nabudu@aclufl.org
Fla. Bar No. 111881

CLONEY & CLONEY, P.A.
Co-Counsel for Plaintiff Class
661 Brevard Avenue
Cocoa, Florida 32922
Telephone: (321) 631-3336
ccc@cloney.com
Fla. Bar No. 179595

By:  Christopher Cloney
     CHRISTOPHER C. CLONEY

13

NATIONAL PRISON PROJECT OF THE
ACLU
Co-Counsel for Plaintiffs
915 15th St. NW
Seventh Fl.
Washington, D.C. 2005
Telephone: (202) 548-6612
ebalaban@aclu.org
admitted *pro hac vice*

By: <u>Eric Balaban</u>
    ERIC BALABAN

14

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing, along with their appended exhibits, and proposed Order, were served by CM/ECF on August 9, 2018 on all counsel or parties of record on the Service List below.

/s/ Nancy Abudu

Service List

Terrence Lynch, Esq.
Office of the General Counsel for
the Broward County Sheriff
2601 West Broward Blvd.
Fort Lauderdale, FL 33312
Electronic Service
Terrence_Lynch@sheriff.org

Howard R. Messing, Esq.
2200 South Ocean Lane, Apt. 2510
Fort Lauderdale, FL 33316
Electronic Service
howardmessing@aol.com